UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Bryce R. Scott,  )
        Plaintiff  )
  )
v.  )  Case No. 09-1189
  )
City of Peoria, et al,  )
        Defendants  )

**ORDER**

Now before the Court is the Plaintiff's Motion to Compel (#57). The motion is fully briefed, and I have carefully considered all of the submissions of the parties. For the following reasons, the Motion to Compel is GRANTED.

**INTRODUCTION**

In this case, Plaintiff alleges that the individual defendants were involved in the use of excessive force during a traffic stop. In addition to the individual liability of the police officers, Plaintiff has asserted a *Monell* claim against the City of Peoria.

The underlying events resulted in an internal investigation conducted by the Peoria Police Department. Plaintiff has sought to obtain the documents relating to that investigation. Defendants initially asserted a blanket "self-critical analysis privilege." After months during which the parties attempted to resolve the dispute, Defendants produced a privilege log and asserted a second privilege, the "executive privilege." In addition, Defendants have challenged the relevance of some of these documents.

**PRIVILEGE GENERALLY**

The Federal Rules of Civil Procedure provide that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). A party declining to produce discovery on the grounds that it is privileged has the burden of establishing the existence of the privilege as well as its applicability in the particular situation. Bank of America v. Veluchamy, 643 F.3d 185 (7th Cir. 2011); U.S. v. Tratner, 511 F.2d 248, 251-52 (CA7 1975); F.T.C. v. Shaffner, 626 F.2d 32, 37 (7th Cir.1980). Blanket claims of privilege are not acceptable. Holifield v. U.S., 909 F.2d 201, 204 (7th Cir. 1990); U.S. v. White, 970 F.2d 328, 334 (7th Cir. 1992); Shaffner, 626 F.2d at 37.

Privileges are construed narrowly and the requirements for establishing privilege are strictly enforced, because privileges are viewed as being in derogation of the search for truth. , University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990); U.S. v. Nixon, 418 U.S. 683, 710 (1974); Valero v. U.S., 569 F.3d 626, 630 (7th Cir. 2009); U.S. v. BDO Seidman, LLP, 492 F.3d 806, 815 (7th Cir. 2007). A privilege is therefore applied only where necessary to achieve its purpose, BDO Seidman, 492 F.3d at 815, and only where it "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." Trammel v. U.S., 445 U.S. 40, 50 (1980).

In federal question cases, such as the one now before this Court, privilege is "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. In federal question cases, the general rule is that only federal privileges are applicable; state law privileges are not incorporated into federal common law. EEOC v. Illinois Dept. of Employment Sec., 995 F.2d 106 (7th Cir. 1993). Notwithstanding that general rule, comity between state and federal governments "impels federal

courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981).

The Federal Rules also address the manner in which privilege is to be asserted. A party withholding discoverable information on the ground of privilege must "(i) expressly make the claim; and (ii) describe the nature of the documents ... not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A).

## SELF-CRITICAL ANALYSIS PRIVILEGE

More than 15 years ago, the Seventh Circuit noted the "prevailing view" that self-critical portions of affirmative action plans are privileged, noting that the "bounds of the privilege depend on the extent to which the policy of equal opportunity in employment will best be served in the particular circumstances presented by each case." Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir. 1985). In Burden-Meeks v.Welch, 319 F.3d 897 (7th Cir. 2003), the Court declined to elaborate on the privilege, finding it unnecessary to decide the questions whether the "novel" privilege of self-critical analysis exists and if so, its scope.

Other than these two cases, the Seventh Circuit has not spoken to the self-critical analysis privilege. Hence, this Court must evaluate this privilege under the general principles discussed in the preceding section, beginning with the question whether the privilege exists at federal common law. As the Memorial Hospital Court explained, that examination should be guided by two basic concepts:

> First, because evidentiary privileges operate to exclude relevant evidence and thereby block

the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should "weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case."

Memorial Hospital, 664 F.2d at 1061-1062.

The City cites three cases for the proposition that the privilege is recognized in this Circuit. Those three cases are: Morgan v. Union Pacific R. Co., 182 F.R.D. 261 (N.D.Ill.1998); Robbins v. Provena St. Joseph Medical Center, - F. Supp. 2d -, Case 03C1371, 2004 WL 502327, March 11, 2004 (N.D.Ill.); and Tice v. American Airlines Inc., 192 F.R.D. 270 (N.D.Ill.2000).

In Morgan v. Union Pacific R. Co., 182 F.R.D. 261 (N.D.Ill.1998), the defendant asserted the self-critical analysis privilege in order to protect the railroad's post-accident investigation reports from disclosure. The Court noted "vast array of inconsistent decisions" on the question whether the privilege exists in federal common law. Assuming for the sake of argument that the privilege did exist, the Morgan Court went on to determine the proper scope of the privilege in the factual context of the case, concluding that the privilege did not apply to protect the documents. Despite the City's reliance on this case, it does not stand for the proposition that the privilege exists; the Morgan Court simply assumed its existence.

The other case cited by the City is Robbins v. Provena St. Joseph Medical Center, - F. Supp. 2d -, Case 03C1371, 2004 WL 502327, March 11, 2004 (N.D.Ill.), the privilege was asserted to protect from disclosure employee complaints (known as "ADOs") pertaining to under-staffing of nurses at the hospital and other related matters, such as follow-up correspondence, investigations, and conclusions. The case arose under federal labor laws. The Court did not discuss whether the

privilege existed at federal common law. It simply applied what it believed to be the correct legal standard, finding that the documents were self-generated for the purpose of critical analysis, that the public had a strong interest in the flow of this information because it affected patient care, that allowing use in litigation would adversely impact the use of these documents, and that the documents were maintained on a strict, need-to-know basis. The Court may have been swayed by the fact that these documents were also statutorily protected under Illinois' Medical Studies Act, another privilege asserted in the case. Once again, however, the Court simply presumed that the privilege existed; it made no such finding.

The same is true of the third case, Tice v. American Airlines Inc., 192 F.R.D. 270 (N.D.Ill.2000), where the court began its discussion, "Assuming that the federal common law recognizes the self-critical analysis privilege..."

Each of these cases, simply presumed the existence of the privilege without deciding that issue. They do not stand for the proposition that the privilege exists.

In the most recent case within the Seventh Circuit, Ludwig v. Pilkington North America, Inc., - F. Supp. 2d -, Case No. 03C1086, 2004 WL 1898238, 1, Aug. 13, 2004 (N.D.Ill.), the court engaged in a thorough discussion of this privilege The court first characterized the cases within our Circuit as being "somewhat hesitant to embrace the self-critical analysis privilege and have often qualified their uses of the privilege with phrases like 'assuming that the self-critical analysis privilege exists' or have noted that other courts have questioned the existence of such a privilege altogether." Id. at *1, citing cases, including the cases cited by the City. The Ludwig court continued:

> The general hesitation of the courts to fully embrace this privilege is quite understandable since its application will lead to the exclusion of extremely relevant and persuasive evidence.

5

> In theory, this exclusion is justified by the advancement to the public's interest in having companies investigate and ultimately cure problems with their products or processes. While the courts' general hesitance has caused some frustration for supporters of this privilege, ... it is, in my opinion, necessary to ensure that it is the public's interest, and not the asserting party's interest, that is served when relevant evidence is withheld pursuant to this privilege.

2004 WL 1898238 at #3.

As was true not only in the three cases cited by the City but also in the majority of cases (both in and out of the Seventh Circuit) discussing this privilege, the Ludwig court found it unnecessary to decide whether the privilege is recognized in federal common law, because to the extent it may exist, it did not apply to the documents in question.

There can be no doubt that this privilege exists; that was, after all, what the Seventh Circuit said in Coates, 745 F.2d at 551. Moreover, given the numerous post-Coates courts that have afforded some level of recognition to the privilege, I conclude that federal common law has come to recognize the self-critical analysis privilege. It is therefore necessary to define the contours of that privilege and determine whether it protects the documents in question in the case at bar.

The fundamental purpose of the privilege is to protect from disclosure documents that contain "candid and potentially damaging self-criticism" Morgan, 182 F.R.D. at 264, where disclosure of those documents would harm a significant public interest. Whether the privilege applies in a particular fact situation depends in significant part on balancing the public interest furthered by self-assessment against the litigant's private interest in pursuing the search for truth. The precise formulation of this balancing test has therefore taken on somewhat different guises, depending on the public and private interests at issue in the particular case. See, Morgan, 182 F.R.D. at 264 (citing cases).

For example, in the employment context, courts have extended the privilege to protect

documents created by private employers legally mandated to critically evaluate their hiring and personnel polices. This need to satisfy a legal mandate was the foundation of the Coates decision, where an affirmative action plan mandated periodic internal reviews and revisions of hiring and personnel assignments. Coates, 745 F.2d at 551. That court found that the substantial public interest in affirmative action was advanced by protecting the governmentally-mandated internal reviews; this was deemed to outweigh the private interest being pursued in the civil litigation.

The privilege has not, however, been limited to legally-mandated documents. In Morgan, the Court differentiated the legal standard used in employment cases, where statutes required employers to evaluate their practices, from the standard that made sense in tort cases. The public interest in tort cases - promotion of public safety through voluntary and honest self analysis - did not require a special governmental mandate. The Morgan Court concluded that the public's substantial interest in encouraging railroads (such as the defendant in that case) to engage in critical self-evaluation to promote public safety meant that there was no requirement that the privilege only protected documents that were governmentally mandated.

Coates, Morgan, and other cases emphasize that factual context is critical in determining the proper legal standard. None of the cases discussed above involve police department documents, so they are not particularly helpful in determining the proper standard to apply in this case. Defendant has pointed to two cases that do involve police department documents. These two cases therefore merit careful attention.

In the first case, Hobley v. Burge - F .Supp. 2d -, - F. Supp. 2d -, Case No. 03C3678, 2006 WL 1460028, May 24, 2006 (N.D.Ill.), the Audit and Control Division of the Chicago Police Department had submitted an audit report to the Police Superintendent describing serious problems

7

with processing and storage of evidence. In post-conviction proceedings, Hobley had subpoenaed the City to obtain this report to support his argument that the prosecution had used a piece of evidence from the evidence room that had not been recovered from the crime scene. In determining whether the audit report should be designated "confidential" under a protective order, the court considered whether it was protected by the self-critical analysis privilege. The court noted the lack of any authority applying the privilege to government documents, explaining:

> [The privilege] was initially developed to promote public safety by encouraging businesses to evaluate their safety procedures voluntarily. It was subsequently extended to protect business entities that are legally mandated to undertake critical evaluation of their hiring and personnel policies. However, a governmental entity undertaking at taxpayer expense an audit of its performance of its public duties is arguably very different.

Id. at *3 [citations omitted].

Despite the Hobley court's hesitation to apply the privilege to government documents, the court went on to define the applicable legal standard: (1) whether the information resulted from critical self-analysis; (2) the public's interest in preserving the free flow of the type of information sought; (3) whether the information is of a type whose flow would be curtailed if discovery were allowed; and (4) whether the document was prepared with the expectation that it would be kept confidential and has in fact been kept confidential. Id. at *1.

The Hobley court found the first two elements satisfied but concluded that the City had failed to show the third element, namely that the type of self-critical analysis at issue in an audit would be curtailed if the report were made public. Quoting a New York case, the court stated, "The police department needs to continue to monitor itself to ensure that department procedures are effective and that officers are complying with these procedures. It is unlikely that production of the [report] would halt this self analysis process." Id., quoting Skibo v. City of New York, 109 F.R.D. 58, 64

(E.D.N.Y.1985). The court also found that the report had not been kept entirely confidential and that most of the report consisted of objective information, not subjective evaluation. The audit report, in other words, was not protected by the privilege.

The second police document case is Gardner v. Johnson, - F. Supp. 2d -, 2008 WL 3823713, Aug13, 2008 (N.D.Ill.2008). In that case, the plaintiff sought an investigation file created by the department as a result of plaintiff's complaints to the department about his arrest. The legal standard applied by the court was the same standard as was used in Hobley. The court found that the document had not been kept confidential so the privilege did not apply. Despite that finding, the court directed redaction of any section containing the investigator's "subjective critique of the arresting officer's conduct or police department policies." See, Ludwig, 2004 WL 1898238 at *1-2. The court provided no explanation for this latter redaction.

Applying this legal test to the case before this Court, I find the following. First, the information contained in the investigation report resulted from critical self-analysis. Second, the public has a strong interest in preserving the free flow of this type of information, because it is clearly in the public's interest to be certain that tax-supported police departments and police officers are operating within constitutional, statutory and procedural guidelines. There has been no suggestion by either party that this investigation report has been disclosed to any person or entity outside the department.

The only real issue is the third prong: whether preparation of this type of investigation report would be less likely if the City's police department knew that it would be discoverable in civil litigation. Defendant cites and quotes from any number of cases for the proposition that these documents should be privileged, but those cases are all factually distinguishable from the case at bar.

For example, in Kott v. Perini, 283 F. Supp. 1, 2 (N.D. Ohio 1968) the documents sought were police officer notes regarding a particular criminal investigation, and the party seeking the notes was the person arrested, charged and convicted. He sought the notes for use in his *habeas corpus* case. There is no "critical self-analysis" involved in such notes. In O'Keefe v. Boeing Co., 38 F.R.D. 329, 335 (S.D.N.Y. 1965), the report at issue had been prepared by the Air Force as an evaluation of its subcontractors. Because the Air Force has no subpoena power, it relied completely on voluntary statements by employees of the subcontractors. Such a report would be impossible to produce if the employees knew that their employer would or could see the finished report.

The other cases on which Defendant relies are similarly factually distinguishable. Medical records and post-accident reports in the private sector are simply not comparable to reports generated by police departments. The constitution and the laws impose on our police officers and police departments certain standards which citizens are entitled to expect they will uphold. When they are accused of falling short, as they are in the case before this court, the public has an extremely strong interest in assuring that the accusations are properly addressed and investigated. Given the political pressures that can be exerted on governmental entities, it is doubtful that making these reports available would result in curtailment of the flow of information necessary for the preparation of these reports.

The self-critical analysis privilege has been found not applicable to the records of internal affairs investigations in civil rights suits against police officers, although the parties have cited and the court has located no such case from a court within the Seventh Circuit. See, e.g., Soto v. City of Concord, 162 F.R.D. 603, 620 (N.D. Cal. 1995); Kelly v. City of San Jose, 114 F.R.D. 653, 665 (N.D. Cal. 1987); King v. Conde, 121 F.R.D. 180 (E.D.N.Y.1988). These cases express the same

conclusion that was discussed in the preceding paragraph, namely that public entities have an obligation to perform these reviews, and making those reviews subject to public scrutiny ensures that the investigations will be thorough.

In Soto, the Court declined to recognize the self-critical analysis privilege, opting to evaluate the documents under the "official information privilege." In that analysis, however, the court rejected the police department's assertion that disclosure of citizen complaints would discourage citizens from filing such complaints, because there was no proof of special circumstances that would credit the department's "purported interest in preserving the anonymity of citizen complainants." Id. at 621. The court similarly rejected the assertion that the department's internal investigatory system would be harmed by disclosure of citizen complaints, finding that such a "general assertion" was insufficient to support the clam of privilege.

In Kelly, the court noted the "profound" importance of the civil rights statutes and cautioned that courts should not use "empirically unsupported and debatable assumptions" to shift the burden from the police department asserting the privilege to the civil rights plaintiff. The court carefully examined and rejected the broad contention that the possibility of disclosure might make the officers who participate less honest or candid.. 114 F.R.D. at 665. Quoting an earlier case, the court stated:

> No legitimate purpose is served by conducting the investigations under a veil of near total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court may examine the file in the event of civil litigation may serve to insure that these investigations are carried out in an evenhanded fashion, that the statements are carefully and accurately taken, and that the true facts come to light, whether they reflect favorably on the individual police officers involved or on the department as a whole.

Id. at 665, quoting Mercy v. Suffolk County, 93 F.R.D. 520, 522 (E.D.N.Y.1982).

In King, the court described the threshold showing a police department must make to justify non-disclosure on the basis of the official information privilege.

>Unless the government, through competent declarations, shows the court *what interests* [of law enforcement or privacy] would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful balancing analysis."

Id. at 189, quoting Kelly, 114 F.R.D. at 669 [emphasis in original]. See also, Wiggins v. Burge, 173 F.R.D. 226 (N.D.Ill.1997)(quoting King and Mercy, supra, with approval).

While the cases discussing the "official information" privilege are not directly apposite to the "self critical analysis" privilege at issue in this case, those cases do reveal some of the same concerns that would arise should either privilege be applied to police department documents. Here, the City has asserted the privilege without the support of any empirical evidence. The articulate discussion in Kelly and Mercy, supra, convinces me that the public interest asserted by the Defendants does not in this case outweigh the Plaintiff's search for the truth in this civil rights case.

Similarly, in Wiggins v. Burge, 173 F.R.D. 226, 230, 173 F.R.D. 226 (N.D.Ill.,1997), a police misconduct case, the court was considering whether certain documents should be protected by a protective order. That evaluation included the need to balance the interests involved: the harm to the party seeking the protective order and the importance of disclosure to the public. This balancing, very similar to the balancing required in the self-critical analysis privilege, involved the public interest in "the health and welfare of the general public and the integrity of the police department," which the court concluded "far outweighs any harm to the police officers. Id..

Privileges are narrowly construed, and the party asserting the privilege must meet its burden of showing entitlement to protections. Defendants have failed to meet its burden of establishing the third prong of the legal standard. That finding makes it unnecessary to address in any detail Plaintiff's wholly-unsupported suggestion that Defendants waived this privilege by failing to invoke it consistently. Specifically, Plaintiff points out that seven other investigation files have been

produced without any assertion of privilege. Defendants respond that these 7 files were "old records containing nothing of consequence." More importantly, however, Defendant points out that assertion of privilege is on a document-by-document basis and that production of one document does not, standing alone, constitute waiver. I conclude that production of these files did not constitute waiver as to the particular investigation file at issue, especially in light of Plaintiff's cursory presentation of this issue.

For the reasons explained herein, I find that the documents in question are not protected by the critical self-analysis privilege. To that extent the motion to compel is GRANTED.

## EXECUTIVE PRIVILEGE

Defendants also asserted "executive privilege" as to the investigative report. The executive privilege[1] "protects communications that are part of the decision-making process of a governmental agency." United States v. Farley, 11 F.3d 1385, 1389 (7th Cir.1993) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-52 (1975)). The privilege protects from disclosure[2] "documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated." Dept. of Interior v. Klamath Water Users Protective Assoc., 532 U.S. 1, 9 (2001). See also, U.S. v. Zingsheim, 384 F.3d 867, 872 (7th Cir. 2004)(the privilege "shields recommendations to high-ranking officials.") (citing Cheney v. District

---

[1] The "executive privilege" is sometimes referred to as the "official information privilege" or the "deliberative process privilege." See, e.g., K.L. v. Edgar, 964 F.Supp. 1206, 1208 (N.D.Ill.1997); Landry v. Fed'l Dep. Ins. Corp., 204 F.3d 1125 (D.C. Cir.2000).

[2] The Illinois Supreme Court has refused to recognize this privilege. Evans v. City of Chicago, 231 F.R.D. 302, 316 (N.D.Ill.2005), citing People ex rel. Birkett v. City of Chicago, 184 Ill.2d 521, 235 Ill.Dec. 435, 705 N.E.2d 48 (1998). As explained above, federal common law (not state law) ordinarily governs questions of privilege in a federal question case. Interestingly, though, if this dispute were proceeding in Illinois' courts, the executive privilege would not protect these documents from disclosure.

Court, 542 U.S. 367 (2004); and U.S. v. Nixon, 418 U.S. 683 (1974); Enviro Tech Intern., Inc. v. U.S.E.P.A., 371 F.3d 370, 374 (7th Cir. 2004)(documents reflecting deliberative or policy-making processes of governmental agencies are privileged).

In none of the above cited cases was the governmental entity asserting the privilege a local government; all were either federal agencies or state-created agencies or entities. There are a few cases involving local government. For example, in Griffin v. City of Milwaukee, 74 F.3d 824 (7th Cir. 1996), the trial court had denied a motion to compel a police investigation file, finding the file irrelevant to the pending summary judgment motion and also finding it protected under the executive privilege. The Court of Appeals affirmed those findings without any discussion of the privilege or citation to case law, simply stating that finding the document privileged and not relevant were "valid reasons" for denying the motion to compel. Id. at 829. While this case certainly suggests that there is no blanket rule against applying executive privilege to protect investigative files from discovery, the lack of discussion provides no guidance as to when that protection is appropriate. Moreover, Griffin was a case that arose in the employment context, a factual distinction that has proved important in the evaluation of privilege. Griffin cannot simply be applied as a general rule.

Defendants also cite Elliott v. Webb, 98 F.R.D. 293, 296 (D.Idaho 1983), a case involving a city police department. The plaintiff sought the contents of the officers' personnel files The Court defined the executive privilege as preventing disclosure of information the disclosure of which would be contrary to public interest. The court concluded that in the context of discovery of police investigation filed in civil rights action, "only strong public policy should be permitted to prevent disclosure since enforcement of 42 U.S.C. 1983 is placed solely in the hands of individual citizens acting in the capacity of private attorneys-general." Id. at 296.

The Elliott Court made no effort to examine whether the officers' personnel files reflected advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies were formulated. The Court's broad definition of the privilege made that examination unnecessary. The Court's broad definition, however, is inconsistent with binding precedent cited above, and I find the opinion to be of no assistance in the case at bar.

Applying the definition that is binding in this Court, I find that the type of investigation report that was prepared in this case does not fall within the parameters of the privilege. For this privilege to apply, the document must be "deliberative." Becker v. IRS, 34 F.3d 398, 403 (7th Cir.1994). See, Evans, 231 F.R.D. at 315 -316. This investigation was ordered because of a specific incident that had provoked negative publicity and that was likely to lead to criminal and/or civil litigation against the officers involved. Unlike broad-ranging investigations designed to develop municipal-wide policy or to provide legislative guidance, this investigation was limited to this single incident. There was no "deliberative process" involved. Other than Griffin and Elliott, two unhelpful cases in this factual scenario, this type of investigative report has never been found protected by the executive privilege.

The conclusion that the report is not privileged is demonstrated by considering the careful evaluation in Evans, supra. That case involved a former inmate who had been pardoned by the governor. He sued police officers, alleging a conspiracy to frame him for a murder he did not commit. He sought discovery from the Illinois Prisoner Review Board, asking for the information the Board had provided to the governor. The Board asserted the executive privilege.

The Court enunciated a two-step analysis for determining whether the privilege should be applied to prevent discovery of otherwise relevant information. First, the court must decide whether

the government has shown that the privilege applies to the documents the government seeks to protect. This requires the government to show that (1) the claim of privilege was formally asserted by the agency head, one of its high officers, or its counsel, (2) there are "precise and certain reasons" for preserving the confidentiality of the documents, and (3) the documents are specifically identified and described. Id. citing U.S. v. Reynolds, 345 U.S. 1 (1953) and Landry v. FDIC, 204 F.3d 1125, 1235 (D.C. Cir. 2000)(citing cases); and Ferrell v. U.S. Dept. of Housing and Urban Development, 177 F.R.D. 425, 428 (N.D.Ill.1998). Then, if the government meets that threshold burden, the litigant has the burden of showing that it has a particularized need for the documents. Evans, 231 F.R.D. at 316.

In the case now before this Court, Defendants prepared privilege log asserts the executive privilege, and it lists with specificity the documents being withheld. The log is entirely lacking in "precise and certain reasons" that the privilege should apply to each document, and the arguments made by Defendants similarly lack the requisite precision. It is therefore impossible to conclude that Defendants have met their initial burden of properly asserting this privilege.

Either because the privilege does not, by definition, apply to the type of investigative report at issue here, or because the Defendants have failed to meet their burden of showing that there are precise reasons that the withheld documents should be privileged, I conclude that the executive privilege does not apply to protect these documents from production. To that extent, the motion to compel is GRANTED.

## RELEVANCE

Defendants also assert that certain parts of the investigative report are not relevant. The Federal Rules of Evidence define "relevant evidence" as being "evidence having any tendency to

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The Federal Rules of Civil Procedure allow discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1).

Neither the motion to compel nor the response identifies with specificity any document that is or is not relevant, much less makes specific arguments as to those particular documents. Defendants assert that the "Professional Standards Files" regarding other investigations involving these officers are not relevant, while the Plaintiff asserts that communications between the City and the individual Defendants regarding the investigation are relevant. Each side dedicates one paragraph only to its relevance argument.

The relevance issue is completely undeveloped and is therefore not considered by the Court. Given the very broad definition of "relevance," and the rulings as to privilege contained in this order, the parties are directed to re-evaluate their positions on this question and make every good faith effort to resolve, on a document-by-document basis, any remaining issues of relevance.

## CONCLUSION

The motion to compel is granted as stated herein. I find, however, that the internal investigation report should be subject to a protective order that strictly limits the use to which these documents may be put and the persons to whom these documents may be shown, at least during discovery. The parties are directed to draft a protective order specific to this report that contains appropriate limitations on the use and disclosure of this information, keeping in mind Local Rules and case law relating to privacy and sealed documents. A proposed protective order shall be filed for approval within 14 days of this date. Once the protective order has been entered, Defendants

shall have 14 days within which to serve the documents discussed herein.

ENTERED ON October 26, 2011

           s/ John A. Gorman

           JOHN A. GORMAN
        UNITED STATES MAGISTRATE JUDGE