UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

---

| | |
|---|---|
| **BRYCE R. SCOTT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) Case No. 09-CV-1189 |
| | ) |
| **GERALD W. SUELTER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**OPINION**

This case is before the court for ruling on the First Motion in Limine (#87) filed by Defendants, Gerald W. Suelter, Timothy L. Wight, Jeremy J. Layman, James A. Krider, Andrew Smith and Conor Wowra. This court has carefully considered Defendants' Motion and the Response (#88) filed by Plaintiff, Bryce R. Scott, with attached case law. Following this careful and thorough review, this court rules as follows: (1) Defendants' First Motion in Limine (#87) is GRANTED in part and DENIED in part.

ANALYSIS

STANDARD

The "motion in limine is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." Jonasson v. Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). District courts have "broad discretion in ruling on evidentiary questions during trial or before on motions *in limine*." Jenkins v. Chrysler

Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002). A motion in limine "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." Jonasson, 115 F.3d at 440. Therefore, the moving party bears the burden of establishing that the evidence is not admissible for any purpose. Mason v. City of Chicago, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Unless this high standard is met, rulings on evidentiary matters should be deferred until trial so that issues of foundation, relevance and prejudice may be resolved in the proper context. Mason, 631 F. Supp. 2d at 1055-56; Townsend v. Benya, 287 F. Supp. 2d 868, 872 (N.D. Ill. 2003); see also Jonasson, 115 F.3d at 440. In addition, any ruling in limine may be subject to change as the case unfolds and the court is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling. Betts v. City of Chicago, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011).

## DEFENDANTS' FIRST MOTION IN LIMINE

### A. Evidence of Other Incidents

Defendants' first request is that this court exclude evidence pertaining to other incidents of police misconduct unrelated to the incident involving Plaintiff, such as prior allegations of misconduct against individual officers. In his Response, Plaintiff stated that he does not object to this motion. Plaintiff further stated, however, that Defendants' reasoning in support of its request should cut both ways, meaning that Defendants should not be able to enter into evidence testimony or documents pertaining to other incidents involving Plaintiff and law enforcement officers. Plaintiff stated that, if Defendants are not in

agreement, Plaintiff will address this issue in his own motions in limine.

Because Plaintiff has not objected to Defendants' first request, this request is GRANTED.

### B. Testimony Regarding City of Peoria Policies and General Orders

Defendants next requested an order excluding any mention of the Peoria Police Department's General Orders, rules or policies and any violation thereof. Defendants argued that the Seventh Circuit has consistently held that the violation of departmental policies or orders is irrelevant to a Fourth Amendment claim, citing Thompson v. City of Chicago, 472 F.3d 444 (7th Cir. 2006). Defendants argued that the evidence is similarly irrelevant to Plaintiff's state law battery claims. In Thompson, the Seventh Circuit stated:

> The fact that excessive force is "not capable of precise definition" necessarily means that, while the [Chicago Police Department's] General Order may give police administration a framework whereby commanders may evaluate officer conduct and job performance, it sheds no light on what may or may not be considered "objectively reasonable" under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter.

Thompson, 472 F.3d at 454. The court then stated that, "[w]hat's more, this court has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.'" Thompson, 472 F.3d at 454, quoting Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003).

The court held that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." Thompson, 472 F.3d at 454; see also Whren v. United States, 517 U.S. 806, 815 (1996) (concluding that, because police rules, practices and regulations vary from place to place and from time to time, they are an unreliable gauge by which to measure the reasonableness of police conduct). The court in Thompson also concluded that the evidence was properly excluded under Rule 403 of the Federal Rules of Evidence with respect to the plaintiff's state law claim. See Thompson, 472 F.3d at 456-57. In addition, the court in Thompson expressly addressed, and rejected, the notion that a limiting instruction could render evidence of a failure to adhere to General Orders admissible. Thompson, 472 F.3d at 457.

In his Response, Plaintiff argued that other district courts have allowed such evidence and also argued that while he "has no intention of arguing that disregard of a rule is proof that the constitution has been violated, breaches of protocol may nevertheless be probative to facts in dispute." Plaintiff argued that he intends to show that the Peoria Police Department provides certain rules about how certain situations are expected to be handled such as when officers arrive on the scene of a traffic stop as well as when making an arrest. Plaintiff argued that this evidence "would obviously be relevant to the claims and defenses in this case if Plaintiff can show that protocol was breached during the police interactions with Plaintiff on the scene." Plaintiff also argued that this evidence is relevant and should be admitted because he is seeking punitive damages and Defendants' knowledge that certain behaviors are prohibited is probative of whether Defendants' actions were malicious.

This court first notes that the cases Plaintiff cited where district courts allowed this kind of evidence all predate Thompson and are "flatly inconsistent with *Thompson*'s teachings." See Delgado v. Mak, 2008 WL 4367458, at *8 (N.D. Ill. 2008). Further, while this type of evidence has been found relevant in Eighth Amendment cases, Thompson applies and bars such evidence in a Fourth Amendment case. See Maus v. Greening, 2012 WL 4903326, at *2 (E.D. Wis. 2012). This court therefore concludes that Plaintiff cannot introduce evidence of any Peoria Police Department's General Orders, rules or policies and any violation thereof to show that Plaintiff's constitutional rights were violated or in support of his state law battery claims. See Ratliff v. City of Chicago, 2012 WL 5845551, at *2 (N.D. Ill. 2012).

Plaintiff has cited Via v. Lagrand, 2007 WL 495287, at *6 (N.D. 2007), in support of his argument that evidence of violations of police department rules and regulations should be allowed with regard to his claim for punitive damages. Via is not a Fourth Amendment case but instead involved a suit against employees of the Illinois Department of Children and Family Services who participated in a DCFS finding that the plaintiff had abused a child at the day care center where she worked. Via, 2007 WL 495287, at *1. In Via, the defendant moved to bar reference to any violation of state or DCFS rules, procedures and policies. Via, 2007 WL 495287, at *5. The district court noted that Thompson "did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages." Via, 2007 WL 495287, at *6. The district court then determined that it would require further argument before it could rule on the motion seeking to exclude this evidence. Via, 2007 WL 495287, at *6. This court

concludes that, because Via is not a Fourth Amendment case and because the district court did not decide the issue, it does not support Plaintiff's argument that the evidence should be admitted with regard to his claim for punitive damages.

The district court in Ratliff granted the defendants' motion in limine, in part, and found that the existence of the General Orders could not be used to show that the plaintiff's constitutional rights were violated. Ratliff, 2012 WL 5845551, at *2. In considering whether the evidence could be used for any other purpose, the district court concluded that any effort to use this evidence would face, at a minimum, a very high hurdle under Rule 403 of the Federal Rules of Evidence. Ratliff, 2012 WL 5845551, at *3. The court also stated that it had to consider "whether the potential for a complex 'trial within a trial' focused on General Orders, rules, and/or policies will distract the jury from the critical issues for decision while adding very little of probative value for their consideration." Ratliff, 2012 WL 5845551, at *3. The court stated that it could not "conclude definitively that there is no scenario in which General Orders, rules, or regulations conceivably could come into this case." Ratliff, 2012 WL 5845551, at *3. The court cited Via and stated that "to the extent that the door remains open under *Thompson*, it is only slightly ajar." Ratliff, 2012 WL 5845551, at *3. The court then reserved its decision as to any such testimony, evidence or argument in support of a punitive damages claim. Ratliff, 2012 WL 5845551, at *3; see also Bruce v. City of Chicago, 2011 WL 3471074, at *3 (N.D. Ill. 2011); Delgado, 2008 WL 4367458, at *8.

After careful consideration, this court concludes that any probative value this type of evidence may have in support of Plaintiff's punitive damages claim is outweighed by its prejudicial effect. See Berg v. Culhane, 2010 WL 3420081, at *2 (N.D. Ill. 2010) ("referring

to the police procedures but then asking the jury to consider them only in their consideration of punitive damages and qualified immunity would be far more prejudicial than probative"). This court concludes that it would be difficult for the jury to consider the evidence solely on the issue of punitive damages and also notes the potential for a complex trial within a trial. This court concludes that the jury will be able to determine whether punitive damages are warranted based upon the evidence of what occurred during the incident in question. See Paine ex rel. Eilman v. Johnson, 2010 WL 785400, at *2 (N.D. Ill. 2010). Therefore, this court concludes that Defendants have shown that this evidence is not admissible for any purpose. Defendants' second request is GRANTED.

C. Internal Investigation and Testimony of Sergeant Boland

Defendants next asked this court to exclude evidence regarding the internal investigation of this matter undertaken by the Peoria Police Department Professional Standards Division, including the "conclusions reached as a result of that investigation, the discipline recommended or imposed, and any related information pertaining to the internal investigation." Defendants argued that this evidence is irrelevant and immaterial. Defendants argued that the case must be decided on the basis of constitutional and tort law standards, not on the basis of alleged violations of departmental policies or orders. Defendants also asked this court to exclude the testimony of Sergeant Boland, the former head of the Peoria Police Department's Professional Standards Division, regarding his impressions and opinions. Defendants argued that, just as evidence of general orders is not admissible, Boland's opinions regarding whether any general orders were violated is inadmissible.

In his Response, Plaintiff did not dispute that evidence regarding the internal investigation should be excluded. See Delgado, 2008 WL 4367458, at *2. In addition, Plaintiff stated that he agreed that he may not seek to have Boland testify as to his opinions and conclusions regarding what happened during the underlying incident, nor may he testify as to anyone's credibility. Plaintiff argued, however, that Boland could offer impeachment testimony regarding statements made by Defendants during the investigation to the extent one or more of the Defendant Officers offered different testimony at trial or offered different testimony at a deposition or in a different proceeding. Plaintiff also argued that Boland is intimately familiar with police department rules and regulations and, to the extent evidence relating to these rules and regulations is permitted by the court, Boland can provide testimony regarding them.

First of all, this court has excluded evidence of police department rules and regulations, so Boland will not be allowed to testify about them. However, this court agrees with Plaintiff that Boland can testify as to statements Defendants made to him during the investigation to be used for impeachment if Defendants' testimony at trial departs from what was previously stated during the investigation. See Cooper v. Dailey, 2012 WL 1748150, at *5 (N.D. Ill. 2012); Norton v. Schmitz, 2011 WL 4984488, at *1 (N.D. Ill. 2011); Delgado, 2008 WL 4367458, at *2. Therefore, Defendants' third request is GRANTED in part and DENIED in part.

### D. Evidence of Criminal Charges Brought Against Defendants

Defendants next argued that evidence that criminal charges were brought against Defendants Smith, Suelter and Layman should be excluded. Defendants pointed out that

Smith was found not guilty and the charges against Suelter and Layman were then dismissed. Defendants argued that only convictions are admissible for impeachment under Rule 609 of the Federal Rules of Evidence. Defendants also contended that any testimony or evidence pertaining to the criminal charges against the officers would be irrelevant, and any probative value would be substantially outweighed by the unfair prejudice or confusion of the jury. Defendants argued that the jury may speculate about the merits of the criminal charges or the basis for the officer's acquittal, both of which have no place in this trial.

In his Response, Plaintiff stated that he did not intend to introduce evidence of the criminal charges in order to impeach Defendants, but argued that he should be allowed to introduce evidence of the criminal charges to show each Defendant's interest and bias. Plaintiff argued that the criminal charges increased the stakes for Defendants Smith, Suelter and Layman, as they faced the prospect of going to prison and losing their careers in law enforcement. Plaintiff argued:

> Those increased stakes gave the Defendant Officers a strong motive to do whatever was necessary to avoid conviction and, arguably, affected the testimony provided in Defendant Smith's criminal trial (in order to avoid being convicted) and in this civil case (in order to avoid possible perjury charges). Such bias is clearly relevant and probative and, therefore, is a subject which Plaintiff should be permitted to explore at trial.

Plaintiff stated that he was not arguing that he should be given free rein regarding the fact that Defendants Smith, Suelter and Layman were indicted. Plaintiff stated that he "simply

seeks to be able to show possible interest and bias underlying the Defendant Officers' testimony." Plaintiff argued that this court can provide the jury with a limiting instruction to address Defendants' concerns.

This court has carefully considered the arguments of the parties. This court notes that the jury will be aware that Defendants Smith, Suelter and Layman have an interest in being found not liable in this case and have had such an interest throughout the proceedings. This court concludes that any probative value that evidence of their criminal charges has regarding the issue of interest and bias is substantially outweighed by the prejudicial effect of this evidence. This court further agrees with Defendants that this evidence could have the effect of confusing the jury and concludes that a limiting instruction could not overcome the danger of prejudice and confusion. Defendants' request that evidence of the criminal charges against Smith, Suelter and Layman be excluded is GRANTED.

### E. Evidence Regarding Insurance or Indemnity

Defendants next asked this court to bar Plaintiff from introducing evidence that Defendants have insurance or other indemnity which will pay Plaintiff or indemnify Defendants for any verdict in this cause. Defendants also requested an order requiring counsel for Plaintiff to inform all witnesses, including Plaintiff, to refrain from any comment or statement which suggests the existence of any type of insurance or indemnification.

In his Response, Plaintiff stated that he agreed that he would not make any reference to indemnification of any judgment by the City or its insurance carrier. Plaintiff also stated, however, that Defendants may open the door to this evidence, for example by intimating poverty or implying that the verdict would work a hardship on themselves or their families.

Plaintiff argued that, if that occurs, he should be permitted to establish indemnification. Plaintiff further stated that the standard analysis could change if Defendants attempt to diminish a punitive damage award by putting their finances at issue.  Plaintiff argued that, if Defendants are allowed to make arguments to the jury revealing that any award of punitive damages comes out of their pockets, the jury must likewise be told that an award of compensatory damages does not.  See Delgado, 2008 WL 4367458, at *4-5.

Because Plaintiff has agreed to Defendants' request, unless the door is opened at trial, Defendants' request is GRANTED.

### F.  Evidence Pertaining to Settlement Discussions

Defendants have also requested that this court exclude any evidence that Defendants made an offer of settlement to Plaintiff during the parties' participation in a settlement conference.  Plaintiff does not object to this request and it is GRANTED.

### G.  Lay Medical Opinion Testimony

Defendants' next request is that this court bar any testimony by Plaintiff or witnesses other than his treating physicians regarding a medical or psychiatric diagnosis or regarding a causal connection between medical or psychiatric conditions or treatment and the alleged incident with Defendants.  Defendants also argued that Plaintiff's lay testimony regarding symptoms such as claimed sleeplessness or anxiety is irrelevant unless there is expert testimony that the conditions were proximately caused by the incident with Defendants. Defendants also stated that it is expected that Plaintiff will claim that he incurred medical and psychiatric treatment as a result of the alleged mistreatment by Defendants which would amount to expert testimony regarding medical diagnosis and causation.  Defendants argued

that, as a lay witness, Plaintiff is not competent to testify to medical or psychiatric diagnoses or to give opinions regarding the proximate cause of such conditions. In addition, Defendants argued that Plaintiff and his witnesses should not be allowed to testify as to what his physicians and treating personnel may have told him as this is inadmissible hearsay which would deny Defendants the opportunity to cross-examine the physician who purportedly uttered the out-of-court statements.

In his Response, Plaintiff stated that he agreed that he and other lay witnesses may not provide a medical diagnosis or causation testimony. Plaintiff also did not contest Defendants' argument that he should not be allowed to provide hearsay testimony regarding what he was told by physicians and treating personnel. However, Plaintiff argued that, based upon Seventh Circuit case law and district court cases in the Seventh Circuit, he should be allowed to testify as to his own medical condition, as he is capable of reliably understanding his own condition, and his own pain and suffering, given the uniquely subjective nature of pain.

This court agrees with Plaintiff that a witness does not need to be a doctor to discuss his own health in general terms. See Collins v. Kibort, 143 F.3d 331, 337 (7th Cir. 1998), A plaintiff may testify about his own perception of his physical and mental health, before and after the incident, which "includes recounting any pain, fear, or anxiety he experienced during those times." Larsen v. Barrientes, 2010 WL 2772325, at *3 (N.D. Ind. 2010). The plaintiff may "only lay the groundwork for the jury to infer causation by testifying about his present health conditions and whether they appeared prior to the incident." Larsen, 2010 WL 2772325, at *4. In addition, given the uniquely subjective nature of pain, a plaintiff may

12

provide his own testimony to prove his pain and suffering.  See Hendrickson v. Cooper, 589 F.3d 887, 893 (7th Cir. 2009); Haack v. Bongiorno, 2011 WL 862239, at *4 (N.D. Ill. 2011).

This court therefore concludes that, while Plaintiff and his lay witnesses may not testify as to any diagnosis or causation, Plaintiff may provide testimony regarding his condition following the incident based upon his recollection and subject to cross-examination.  See Cooper, 2012 WL 1748150, at *7.  Defendants' request is GRANTED in part and DENIED in part.

### H.  "Golden Rule" Argument

For their final request, Defendants have asked this court to bar Plaintiff from presenting any testimony or argument encouraging the jury to place itself in Plaintiff's position or imagine having Plaintiff's injuries in awarding damages.  Plaintiff stated that he does not object to this request and it is GRANTED.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' First Motion in Limine (#87) is GRANTED in part and DENIED in part.

(2) This case remains scheduled for a final pretrial conference on September 12, 2013, at 10:30 a.m. and a jury trial on September 23, 2013, at 9:00 a.m.

ENTERED this 20th day of May, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE